UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

PHILLIP D. SMITH,

        Plaintiff,

   v.

SARA LEE FRESH, INC. and DOES 1 thru 20,

        Defendants.

NO. CIV. S-07-01374 WBS EFB

ORDER RE: MOTION TO STAY COURT PROCEEDINGS AND TO COMPEL ARBITRATION

----oo0oo----

Plaintiff Phillip Smith filed this lawsuit against defendant Sara Lee Fresh, Inc. to recover damages for breach of contract and for conversion resulting from the alleged breach. Defendant subsequently brought this motion to stay the action and compel arbitration.

I.   Factual and Procedural Background

In April of 2001, plaintiff became a distributor of defendant corporation's fresh baked products for a geographic territory of Sacramento County. (Plank-Schwartz Decl. ¶¶ 2-3.) The terms of the parties' business relationship were set forth in

1

a Distribution Agreement ("Agreement"), dated April 23, 2001. (Pl.'s First Am. Compl. ("FAC") Ex. A.)  The Agreement provided that any dispute arising from the relationship thereby created was subject to the mandatory and binding alternative dispute resolution provisions set forth in the Agreement. (Plank-Schwartz Decl. Ex. A, §§ 9.1-9.3.)

On February 13, 2003, after a series of service-related complaints from clients of plaintiff's grocery outlet,[1] defendant sent an initial letter putting plaintiff on notice that he was in breach of the Agreement and instructing him of his rights to cure the breach. (Id. ¶¶ 4-7.)  On July 8, 2003, following multiple notices to plaintiff regarding his continuing breach and failure to cure, defendant terminated plaintiff's distribution rights pursuant to sections 4.1 and 4.4 of the Agreement. (Id. ¶¶ 4-9.)

On June 7, 2007, almost four years after his distribution rights were terminated, plaintiff filed suit against defendant in state court based on allegations that defendant had breached the Agreement by terminating his rights without justification.  (FAC ¶ 19.)  Specifically, the complaint alleges that (1) defendant breached the contract and that the contractual

---

[1] A Store Director at Bel Air Market in Sacramento ("Market"), who had received defendant's products via plaintiff's grocery outlet, reported that it had received 147 units of product from plaintiff that were out of code with expiration dates. (Plank-Schwartz Decl. ¶ 4.)  The Store Director also told defendants that it would no longer permit plaintiff to service this account. Id.  Shortly thereafter, a Safeway Market refused to permit plaintiff to provide service due to what was deemed "inconsistent service," "excessive out of stocks," and "out of code items."  (Id. ¶ 5.)  Finally, an Albertsons Market also refused further service from plaintiff, therein citing "a huge decrease in our service levels," "excessive out of stocks," and "out of code products." (Id. ¶ 7.)

2

clause regarding alternative dispute resolutions is "unreasonable and so ambiguous as to be unenforceable" (id. ¶¶ 16-21), and (2) defendant converted "profits, equipment, inventory and good will developed and owned" by plaintiff. (Id. ¶¶ 22-23.)  On July 11, 2007, defendant removed the action to this court based on diversity jurisdiction via 28 U.S.C. § 1332.  (Def.'s Notice of Removal of Action.)

Defendant now moves to stay the court proceedings and compel arbitration in accord with the Agreement's purported binding arbitration provision.  In response, plaintiff contends that the arbitration provision is unenforceable because the timeframe it sets out is so short as to be unconscionable.

II. Discussion

The Federal Arbitration Act (FAA) provides that a party may seek an order to compel arbitration from a district court where another party fails, neglects, or refuses to arbitrate.  9 U.S.C. §§ 1, 4.  Section 4 "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original).  "The court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order

3

compelling arbitration.  See Cohen v. Wedbush, Noble Cooke, Inc., 841 F.2d 282, 285 (9th Cir. 1988).

Here, because the Agreement's language makes its arbitration provision broadly applicable to "[a]ny dispute between [defendant] and [plaintiff] arising out of the relationship created by [the] Agreement," (Plank-Schwartz Decl. Ex. A, § 9.1), plaintiff correctly declines to contest that the arbitration provision, if valid, would encompass the dispute at issue under the second prong of the aforementioned test. However, plaintiff argues that, under the first prong, the arbitration provision is unconscionable and thereby invalid.

A. Unconscionability

The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable," but courts may decline to enforce them when grounds "exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "Thus, generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening" federal law.  Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996).

In interpreting the validity and scope of an arbitration agreement, federal courts apply state law principles of contract formation and interpretation. See Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205, 1210 (9th Cir.1998).  The contract in this case establishes that California law applies. (Plank-Schwartz Decl. Ex. A, § 11.11.)  Under California law, an arbitration provision is invalid if it was unconscionable at the time it was made.  Cal. Civ. Code § 1670.5; Armendariz v. Found.

4

<u>Health Psychare Servs., Inc.</u>, 24 Cal. 4th 83, 114 (2000).  If an arbitration provision is unconscionable, "the court may refuse to enforce the [arbitration provision], or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."  <u>Armendariz</u>, 24 Cal. 4th at 114.

Unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results.  <u>Id.</u> at 114 (citing <u>A & M Produce Co. v. FMC Corp.</u>, 135 Cal. App. 3d 473, 486-87 (1982)).  Both elements must be present, although not necessarily to the same degree.  <u>Id.</u> at 114 (noting that courts apply a sliding scale where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required . . . and vice versa").

        1.   <u>Procedural Unconscionability</u>

To evaluate procedural unconscionability, the court must examine how the parties negotiated their contract and "the circumstances of the parties at the time."  <u>Circuit City Stores, Inc. v. Mantor</u>, 335 F.3d 1101, 1106 (9th Cir. 2003).  In this evaluation, courts will typically search for signs of surprise and oppression.  <u>Stirlen v. Supercuts, Inc.</u>, 51 Cal. App. 4th 1519, 1532 (1997).  "Surprise" refers to "the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms."  <u>Id.</u> (internal citations and quotation marks omitted).  In turn, "oppression" springs "from an inequality of bargaining power [that] results in no real negotiation and an

absence of meaningful choice." <u>Id.</u>

Defendant's arbitration provision is contained in Article 9 of the Agreement. (Plank-Schwartz Decl. Ex. A, §§ 9.1-9.5) The three sections of the provision relevant to the court's analysis are reproduced below:

> **Section 9.1 <u>Resolution of Disputes</u>**: Any dispute between [defendant] and [plaintiff] arising out of the relationship created by this Agreement shall be subject to the dispute resolution provisions set forth below.
>
> **Section 9.2 <u>Mediation</u>**: In the event of any dispute, either party may initiate a mediation procedure within 10 days of the date on which facts respecting the dispute first come to such party's attention, by submitting a written request for mediation to the Judicial Arbitration & Mediation Services, Inc. ("JAMS[sic]) according to its procedures, or any other mediation service mutually agreed to by the parties according to such mediator's procedures.
>
> The Mediation process shall begin promptly and shall be concluded within ten (10) business days of the day the request for mediation is made, unless the parties mutually otherwise agree. Any and all discussions, negotiations, findings or other statements by the mediator and/or the parties made in connection with the mediation shall be privileged and confidential and shall not be admissible into evidence in any litigation.
>
> **Section 9.3 <u>Arbitration</u>**: If the parties are unable to resolve the dispute through mediation, either party may avail itself of the right to seek relief from an arbitrator, by filing a complaint within twenty (20) days following the conclusion of the mediation process, which period shall constitute an agreed time limitation, and such complaint shall be limited to the cause(s) of action within the scope of the mediation conducted in accordance with § 9.2 above.
>
> Any dispute between the parties subject to this Article shall be decided by neutral binding arbitration conducted in accordance with either the Commercial Arbitration Rules of the American Arbitration Association ("AAA") or the rules of Judicial Arbitration and Mediation Services, Inc. ("JAMS"). . . . Judgment upon the award rendered by the arbitrator shall be final and binding and may be entered in any court having jurisdiction thereof.

(<u>Id.</u> Ex. A, §§ 9.1-9.3.)

Under California law, "adhesion" contracts or arbitration agreements are generally considered to be procedurally unconscionable. Circuit City v. Adams, 279 F.3d 889, 893 (9th Cir. 2002); see also ACORN v. Household Int'l, Inc., 211 F. Supp. 2d 1160, 1168 (N.D. Cal.2002) (in California, "[a] contract or clause is procedurally unconscionable if it is a contract of adhesion."); Armendariz v. Found. Health Psychare Servs., Inc., 24 Cal. 4th 83, 113 (2000)("Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion."). An arbitration contract or provision is one of adhesion if it is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Neal v. State Farm Ins. Cos., 188 Cal. App. 2d 690, 694 (1961). If the contract is adhesive, the court must then determine whether "other factors are present which, under established legal rules . . . operate to render it unenforceable"--that is, whether the contract is indeed unconscionable. Armendariz, 24 Cal. 4th at 113 (internal citations omitted).

Here, the above arbitration provision appears to be one of adhesion because the Agreement is a standardized contract imposed and drafted by defendant, a multinational corporation of superior bargaining strength. In turn, defendant's many distributors, such as plaintiff, are given only "the opportunity to adhere to the contract or reject it." Id. at 113. While this alone supports a relatively legitimate finding of procedural unconscionability, plaintiff can further bolster this finding if

7

"other factors"--i.e., overt instances of surprise or oppression--are present. Id.

To this end, plaintiff has produced no direct evidence showing either surprise or oppression related to the aforementioned sections.[2] Rather, plaintiff alludes only to elements of surprise and oppression in section 9.3, which he construes to mandate submission of a dispute to mediation as a prerequisite to any future right of arbitration. (See Plank-Schwartz Decl. Ex. A, § 9.3 ("If the parties are unable to resolve the dispute through mediation, either party may avail itself of the right to seek relief from an arbitrator, by filing a complaint within twenty (20) days following the conclusion of the mediation process").) Under this interpretation, plaintiff argues that section 9.2's ten day window to determine whether to embark upon mediation is far too short because "if there was no mediation then there could be no arbitration." (Pl.'s Mem. in Opp'n to Def.'s Mot. to Stay 1:27-28.)

However, section 9.2 provides that either party may initiate a mediation procedure by submitting a request for mediation to the JAMS. (Plank-Schwartz Decl. Ex. A, § 9.2.) Section 9.3 then provides that either party may submit a dispute not resolved through mediation to an arbitrator. (Id. Ex. A, § 9.3.) Thereafter, section 9.3 mandates--apparently without regard to whether a party first submitted a dispute to

---

[2] Moreover, plaintiff's memorandum in opposition to this motion was only five paragraphs long and contained one citation. (Pl.'s Mem. in Opp'n of Def.'s Mot. to Stay.) While recognizing that plaintiff's counsel was simultaneously attending to a serious personal matter, the court nonetheless cannot hypothesize and/or fashion plaintiff's legal arguments on his behalf.

8

1 mediation--that any dispute generally subject to Article 9 "shall
2 be decided by neutral, binding arbitration." (Id. Ex. A, § 9.3.)
3 Defendant contends that this latter binding option contemplates
4 disputes that neither party voluntarily submitted for mediation
5 in the first place and thus qualifies an alternative arbitration
6 process from the one that may be initiated following an
7 unresolved mediation.

8          Under this reasonable construction, plaintiff was not
9 required to initiate mediation within ten days or suffer a loss
10 of his opportunity to arbitrate the dispute because the ability
11 to submit the dispute to arbitration was nonetheless available
12 under the latter portion of section 9.3.  As support for this
13 interpretation, the court notes that defendant is still willing
14 to submit the dispute to arbitration despite the passage of
15 almost four years since plaintiff's termination.  Such action
16 negates a contention that terms or conditions were hidden from
17 plaintiff or resulted in an absence of meaningful choice.
18 Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (1997).
19 Further, plaintiff has not claimed that he ever attempted to
20 engage in arbitration or that defendant rejected any such attempt
21 following the lapse of the ten day period in which to initiate
22 mediation.

23          Therefore, the court finds that any surprise or
24 oppression amounting to procedural unconscionability is limited
25 to (1) the general fact that the arbitration provision stems from
26 an apparent adhesion contract and (2) Article 9's ever-so-slight
27 ambiguity with respect to the arbitration procedure following
28 mediation versus the apparent stand-alone arbitration procedure.

9

However, because a reasonable construction of Article 9 differentiates between the arbitration procedures--and circumstantial evidence demonstrates that such construction is indeed defendant's legitimate practice and not an oppressive term designed to disadvantage distributors--plaintiff is relegated to demonstrating a high degree of substantive unconscionability if the court is to deem the arbitration provision unconscionable. Armendariz, 24 Cal. 4th at 114 (noting that while "[t]he prevailing view is that [procedural and substantive unconscionability] must both be present," the more that one of the two is applicable thereby allows less evidence of the other to conclude that the provision is unconscionable).

### 2. Substantive Unconscionability

"Substantive unconsciobability relates to the effect of the contract or provision. A 'lack of mutuality' is relevant in analyzing this prong. The term focuses on the terms of the agreement and whether those terms are so one-sided as to shock the conscience." Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1043 (internal quotation marks and citations omitted) (emphasis in original). "A determination of substantive unconscionability . . . involves whether the terms of the contract are unduly harsh or oppressive." Circuit City v. Adams, 279 F.3d 889, 893 (9th Cir. 2002)(citation omitted); see also Armendariz, 24 Cal. 4th at 114 (substantive unconscionability focuses "on overly harsh or one-sided results"). In accord with California law, courts are instructed to "look beyond facial neutrality and examine the actual effects of the challenged provision." Ting v. AT&T, 319 F.3d 1126, 1149 (9th Cir. 2003).

10

1            In Armendariz, the arbitration clause required only
2   employees to arbitrate their wrongful termination claims against
3   the employer, but did not require the employer to arbitrate
4   claims it may have against the employees. Armendariz, 24 Cal.
5   4th at 115-16. Thus, the California Supreme Court held that, "in
6   the context of an arbitration agreement imposed by the employer
7   on the employee, such a one-sided term is unconscionable." Id.
8   at 118. The court further reasoned that, "although parties are
9   free to contract for asymmetrical remedies and arbitration
10  clauses of varying scope . . . the doctrine of unconscionability
11  limits the extent to which a stronger party may, through a
12  contract of adhesion, impose the arbitration forum on the weaker
13  party without accepting that forum for itself." Id.

14           In Circuit City, the Ninth Circuit found the
15  arbitration agreement at issue there to be "virtually
16  indistinguishable" from the agreement in Armendariz. Circuit
17  City, 279 F.3d at 893. The court found that the agreement was
18  substantively unconscionable because it created an "asymmetrical
19  arrangement" that was "compounded by the fact that [the
20  arbitration agreement] did not allow full recovery of damages for
21  which the employees would be eligible under the FEHA." Id.

22           As opposed to the arbitration agreements in Armendariz
23  and Circuit City, the instant arbitration provision cannot be
24  said to lack mutuality. By its clear terms, the provision has
25  equal binding effect on both parties and sets forth procedures
26  which apply equally to both sides. See 24 Hour Fitness, Inc. v.
27  Superior Court, 66 Cal. App. 4th 1199, 1212-14 (1998) (rejecting
28  allegation of substantive unconscionability where procedures were

11

equally available to both sides and did not favor either one). Further, both arbitration forums designated in Article 9--the AAA and the JAMS--are respected alternative dispute organizations judicially-noted for providing neutral and fair environments. See SI V, L.L.C. v. FMC Corp., 223 F. Supp. 2d 1059, 1064 (N.D. Cal 2002) (recognizing the validity of an arbitration clause based in part on court's confidence "that this dispute can be settled fairly" when submitted to the JAMS); Armendariz, 24 Cal. 4th at 111 (finding that actions including "appointing agencies like the AAA" are sufficient institutional safeguards to protect against corrupt arbitrators).

Based on the foregoing precedent, the terms of the Agreement were sufficiently bilateral to avoid a finding of substantive unconscionability. Ting, 319 F.3d at 1126 ("Where an arbitration agreement is concerned, the agreement is unconscionable unless the arbitration remedy contains a modicum of bilaterality.") (internal citations and quotations omitted). Taken in combination with plaintiff's limited showing of procedural unconscionability, plaintiff is unable to demonstrate that the Agreement's binding arbitration provision is unconscionable. Accordingly, the court must grant defendant's motion to stay the court proceedings and compel arbitration of the dispute.

IT IS THEREFORE ORDERED that defendant's motion to stay court proceedings and compel arbitration be, and the same hereby is, GRANTED. The parties shall forthwith take all necessary steps to submit this matter to arbitration. The arbitration shall be completed on or before September 1, 2008. On or before

September 8, 2008, the parties shall submit a joint status report advising of the outcome of the arbitration.  A status conference is set in this case for September 22, 2008, at 2:00 p.m.  Counsel for both sides shall appear personally at the conference, except that if the arbitration has been completed, and a dismissal of this action has been filed, no appearance at the status conference will be required.

        IT IS SO ORDERED.

DATED:   December 10, 2007

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE